IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SHERRIE CARLSON SANDAU,

        Plaintiff,

    v.

JOHN A. WOOD, CHRISTOPHER CASS
and CITY OF PORTLAND,

        Defendants.

No. CV 07-0632-PK

OPINION AND ORDER

**MOSMAN, J.**,

    This case began as a dispute between neighbors. In the middle of the night, a neighbor called plaintiff Sherrie Sandau to complain that Ms. Sandau's dog was barking. The neighbor then called the police to report that Ms. Sandau had screamed at her and threatened her during their conversation. A police officer for the Portland Police Bureau, John Wood, responded to the call. He spoke to Ms. Sandau, observing that she appeared groggy and slurred her speech, and then spoke to Ms. Sandau's neighbor. As Officer Wood left the neighbor's home, he noticed that Ms. Sandau was screaming and banging on her windows.

    After observing Ms. Sandau's behavior toward her neighbor, Officer Wood called for additional officers and for assistance from mental health workers. Officer Cass arrived at the scene shortly thereafter. When the mental health workers arrived, the officers walked up to Ms. Sandau's house and knocked on the door. When Ms. Sandau refused to let them in, the officers

forcibly entered Ms. Sandau's house and arrested her for disorderly conduct. At the time, Ms. Sandau was wearing two shirts that extended to the middle of her thigh, and nothing below the waist. Although Ms. Sandau repeatedly asked to be allowed to put on pants, the officers ignored her request. Instead, they transported her to the police station ten to fifteen minutes away, where she was fingerprinted, photographed, and then given pants.

Ms. Sandau filed this 42 U.S.C. § 1983 civil rights action against the City of Portland and against Officers Wood[1] and Cass in their individual capacities. Ms. Sandau alleges that defendants violated her Fourth Amendment rights to be free from unreasonable search and seizure by (1) entering her home to arrest her without a warrant, (2) grabbing her hard enough to leave bruises, and (3) transporting her to the station while she was naked below the waist.

On September 1, 2009, Magistrate Judge Papak issued Findings and Recommendation ("F&R") (#115) in the above-captioned case recommending, that Ms. Sandau's Motion for Leave to Amend the Complaint (#86) be GRANTED, that the Motion for Summary Judgment filed by the City of Portland and Officer Cass (#63) be GRANTED IN PART AND DENIED IN PART, and that the Motion for Summary Judgment filed by Officer Wood (#76) be GRANTED IN PART AND DENIED IN PART. All parties filed objections to the F&R (#117, #118, #119); Officer Wood and Ms. Sandau filed responses to the objections (#120, #121, #122).

## DISCUSSION

### I. Motion for Leave to Amend

Parties may timely file objections to a magistrate's order for non-dispositive, pretrial matters. Fed. R. Civ. P. 72(a). On review of the magistrate's order, the district court must

---

[1] Officer Wood is no longer with the Portland Police Bureau.

"modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a); *see also* 28 U.S.C. § 636(b)(1)(A). There is clear error when the court is "left with the definite and firm conviction that a mistake has been committed." *Easley v. Cromartie*, 532 U.S. 234, 242 (2001) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). This standard of review reflects the broad discretion accorded to magistrate judges on pretrial matters. *See, e.g.*, *Osband v. Woodford*, 290 F.3d 1036, 1041 (9th Cir. 2002) (stating that questions of law are reviewed de novo, while pretrial motions—such as discovery matters—are evaluated under the clearly erroneous standard of review) (citations omitted).

Upon review, I find that Judge Papak's order granting Ms. Sandau leave to amend her complaint was neither clearly erroneous nor contrary to law. I therefore decline to modify or set aside Judge Papak's decision. (F&R (#115).)

## II.     Motions for Summary Judgment

With respect to dispositive motions, the magistrate judge makes only recommendations to the court, to which any party may file written objections. The court is not bound by the recommendations of the magistrate judge, but retains responsibility for making the final determination. The court is generally required to make a de novo determination of those portions of the report or specified findings or recommendation as to which an objection is made. 28 U.S.C. § 636(b)(1)(C). However, the court is not required to review, de novo or under any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the F&R to which no objections are addressed. *See Thomas v. Arn*, 474 U.S. 140, 149 (1985); *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). While the level of scrutiny under which I am required to review the F&R depends on whether or not objections have been filed, in

PAGE 3 OPINION AND ORDER

either case, I am free to accept, reject, or modify any of the magistrate judge's F&R. 28 U.S.C. § 636(b)(1)(C).

In their motions for summary judgment, Officers Wood and Cass argue that they are entitled to qualified immunity for their actions. Qualified immunity requires a court to consider two questions.[2] First, when viewing the evidence in the light most favorable to the injured party, "do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Second, was the right "clearly established" such that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted"? *Id.* at 202. The Supreme Court has further defined a "clearly established right" as follows:

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. That is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

*Anderson v. Creighton*, 483 U.S. 635, 640 (1987) (internal citation omitted).

In applying the qualified immunity framework to the facts of this case and viewing the evidence in the light most favorable to Ms. Sandau, Judge Papak found that Officers Wood and Cass violated Ms. Sandau's constitutional rights by entering her home to arrest her without a warrant and by transporting her to the police station without underwear or pants. He then proceeded to the second prong of the analysis and found that the officers would not have reasonably known that entering Ms. Sandau's home was unconstitutional, but they should have known that the manner in which they transported Ms. Sandau to the station violated her

---

[2] Under the Supreme Court's recent decision in *Pearson v. Callahan*, — U.S. —, 129 S. Ct. 808 (2009), a court is not required to consider these questions in any particular order.

PAGE 4 OPINION AND ORDER

constitutional rights. Therefore, Judge Papak recommended granting the officers qualified immunity for Ms. Sandau's home entry claim, but not for her claim that the manner of her detention was unconstitutional.[3] Upon review, I agree with Judge Papak's recommendation. I adopt the F&R (#115) as my own opinion, along with the following analysis.

### A.   *Home Entry*

Judge Papak found that the officers unreasonably entered Ms. Sandau's home because the circumstances known to the officers did not show that Ms. Sandau was in danger of physically harming herself or others. Without a proper predicate, the home entry was a violation of Ms. Sandau's constitutional rights. Judge Papak then concluded that the officers reasonably believed that their entry was justified under the exigent circumstances exception; therefore, Ms. Sandau's constitutional right was not clearly established. The parties argue that this logic is internally inconsistent. I disagree and find that Judge Papak's reasoning flows soundly from the two distinct prongs of the *Saucier* analysis.

An officer may enter a home without a warrant where he reasonably believes that entry is necessary to prevent physical harm "to the officers or other persons." *United States v. Lindsey*, 877 F.2d 777, 780-81 (9th Cir. 1989); *see also Mabe v. San Bernadino County, Dep't. of Pub. Soc. Servs.*, 237 F.3d 1101, 1108 (9th Cir. 2001) ("[*I*]*mminent* danger of future harm is required to show exigency.") (emphasis in original). Whether the emergency doctrine was properly invoked as justification for a home entry necessarily depends on the particular facts of the case.

---

[3] Judge Papak also concluded that Ms. Sandau's other claims, challenging a second entry of her home and the force used during her arrest, did not violate her constitutional rights. He recommended granting summary judgment for defendants as to those claims, and I adopt those conclusions.

PAGE 5 OPINION AND ORDER

*United States v. Bradley*, 321 F.3d 1212, 1214-15 (9th Cir. 2003).

In his findings and recommendation, Judge Papak first viewed the evidence in the light most favorable to Ms. Sandau and found that the officers acted unreasonably in determining that Ms. Sandau presented an immediate threat to herself or others. I agree that Judge Papak's conclusion is a correct application of the law as it now exists.

Second, Judge Papak asked whether Ms. Sandau's constitutional right was clearly established at the time of the violation. In this context, the contours of the right are critical. The question is not whether Ms. Sandau has a right to be free of warrantless searches that are unsupported by probable cause or exigent circumstances, as she obviously does. *See Anderson*, 483 U.S. at 640-41. Rather, the relevant question is "whether a reasonable officer could have believed [the] warrantless search to be lawful, in light of clearly established law and the information the searching officers possessed." *Id.* at 641.

I agree with Judge Papak that the right at issue was not clearly established at the time of the home entry. In 2005, the law allowed officers to enter homes without a warrant to prevent immediate physical harm "to officers or other persons."[4] It was unclear whether, and under what circumstances, it would be reasonable to enter a home to protect a suspect from causing harm to herself. Given the undisputed facts that Ms. Sandau appeared groggy and disoriented,[5] had

---

[4] Although plaintiff cites several cases that suggest the officers unreasonably applied the exigent circumstances exception (*see* Pl.'s Resp. (#122) at 8), most of these cases were published years after the home entry at issue in this case. Caselaw that developed after the home entry may show that Ms. Sandau's rights have been violated; it cannot not show that the rights were clearly established at the time of the violation.

[5] These were later determined to be symptoms of a concussion plaintiff had suffered from falling from a ladder the day before. That fact was not known to the officers at the time of the entry, however.

PAGE 6 OPINION AND ORDER

displayed erratic and threatening behavior toward her neighbor, and pounded on the windows so hard that they shook, it was reasonable for Officers Wood and Cass to believe that they could enter Ms. Sandau's home to protect her from herself. I therefore follow Judge Papak's recommendation in finding that the officers are entitled to qualified immunity for the home entry.

### B. *Manner of Detention*

Officers Wood and Cass challenge Judge Papak's decision to deny them qualified immunity on Ms. Sandau's manner of detention claim. Officer Wood argues that Judge Papak erred in determining the constitutionality of Ms. Sandau's detention sua sponte, implying that he believes Judge Papak recommended granting summary judgment in Ms. Sandau's favor. (Def.'s Obj. (#117) at 3.) I do not read Judge Papak's opinion as determining that Ms. Sandau's detention violated her Fourth Amendment rights as a matter of law. Rather, Judge Papak concluded that Ms. Sandau's rights had been violated only in the context of applying the test for qualified immunity. He then concluded that Ms. Sandau had a clearly established right to bodily privacy during her detention and that the officers were not entitled to qualified immunity on this claim. I agree with his analysis.

A detention may be unconstitutional because its justification is inadequate or because it is carried out in an unreasonable manner. *See Franklin v. Foxworth*, 31 F.3d 873, 875 (9th Cir. 1994). The manner of a detention may be unreasonable if the detention is "unnecessarily painful, degrading, or prolonged, or if it involves an undue invasion of privacy." *Id.* at 876. Although the reasonableness of a detention is evaluated exclusively under the Fourth Amendment, the analysis intersects with the right to bodily privacy protected by the Fourteenth Amendment. *See id.* at 877 (citing Fourteenth Amendment cases in holding that the manner of a suspect's detention was

PAGE 7 OPINION AND ORDER

unreasonable under the Fourth Amendment); *see also York v. Story*, 324 F.2d 450, 455 (9th Cir. 1963) (announcing a right to bodily privacy under the Fourteenth Amendment because "[t]he desire to shield one's unclothed figure from [the] view of strangers, and particularly strangers of the opposite sex, is impelled by elementary self-respect and personal dignity."). In determining whether the manner of a detention is unreasonable, a court should also look to the totality of the circumstances, including the severity of the crime, the impact on the safety of officers and of the public, and whether the suspect is resisting arrest or attempting to flee. *See Graham v. Connor*, 490 U.S. 386, 396 (1989).

  Under the first prong of the qualified immunity analysis, I ask whether Ms. Sandau's constitutional rights were violated while viewing the evidence in the light most favorable to her. Ms. Sandau presented evidence that she was transported to the precinct by male officers while she was naked from the waist down. She repeatedly asked for clothing, but her requests were ignored. The officers made no attempt to provide her with a blanket or other means to cover herself. When she arrived at the station, she was photographed and fingerprinted before she was given pants. These facts suggest that the manner of Ms. Sandau's detention was unreasonable and therefore unconstitutional.

  Next, I consider whether the violation would have been apparent to a reasonable officer. I find that the law clearly established both Ms. Sandau's right to bodily privacy and the corresponding requirement that the manner of detention must not unreasonably infringe on that right. I do not find support for defendants' arguments that they reasonably believed they were not constitutionally required to clothe or otherwise cover Ms. Sandau after her arrest. *Graham* may allow officers qualified immunity in situations where a suspect's right to bodily privacy competes

PAGE 8 OPINION AND ORDER

with safety concerns. Here, however, the officers presented no evidence that providing Ms. Sandau with some kind of covering would have endangered their safety or that of others. Instead, it appears that their decision was one of expediency.

Each officer's counsel also argues that it would have been a greater invasion of Ms. Sandau's privacy to search her house for pants or some other kind of covering, even though she repeatedly requested that they do so. This is the kind of argument only a lawyer could love. At least on these facts, it is specious to suggest Ms. Sandau would have viewed a search of her closet for pants to be a greater invasion of her privacy than being transported half naked to Central Precinct. In the absence of a compelling justification for failing to cover Ms. Sandau's body, I agree that "a reasonable officer would necessarily have understood that Sandau was entitled, at a minimum, to be transported to and processed at the Central Precinct without exposing her nakedness to the public view." (F&R (#115) at 29.) I therefore follow Judge Papak's recommendation and find that the officers are not entitled to qualified immunity on Ms. Sandau's manner of detention claim.

Accordingly, I ADOPT Judge Papak's Findings and Recommendation (#115).

IT IS SO ORDERED.

DATED this  19th  day of October, 2009.

/s/ Michael W. Mosman
MICHAEL W. MOSMAN
United States District Court

PAGE 9 OPINION AND ORDER